IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02214-CMA-MJW

WILLIAM L. WRIGHT,

Plaintiff(s),

v.

HODGE, Dr.,
KATHLEEN BOYD, Nurse,
JUDY BEEMAN,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 59)
and
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 65)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter was referred to this court pursuant to an Order Referring Case issued by Judge Christine M. Arguello on January 25, 2013 (Docket No. 22).

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the Second Amended Prisoner Complaint (Docket No. 18) which is brought pursuant to 42 U.S.C. § 1983. Only three of the six defendants named in that pleading, however, remain. (See Docket No. 20 dismissing defendant Carol Danforth as a party to this action and Docket No. 51 dismissing without prejudice all claims against defendants Bergondo and Frantz based upon plaintiff's failure to serve these defendants and failure to prosecute). Plaintiff alleges the following in that pleading with respect to the three remaining defendants, Dr. Hodge, Nurse Kathleen

2

Boyd, and Judy Beeman.

On about September 30, 2009, plaintiff was told by medical staff that he was infected with Hepatitis C. While at the Arkansas Valley Correctional Facility, a doctor explained treatment for this disease using expensive anti-viral medications, interferon a/ribavrin, for 24 weeks. The doctor also explained that plaintiff would need to complete a modified drug/alcohol program before he was given the medication. Plaintiff completed that program on November 30, 2012. However, as of December 14, 2012, plaintiff had not been treated.

Defendant Hodge saw plaintiff at the Colorado State Penitentiary on August 4, 2011, at which time he denied plaintiff treatment. He continued to deny treatment even after he was aware of a December 15, 2011, e-mail (exhibit H - Docket No. 18 at 13) in which Paula Frantz opined that it was appropriate to waive the requirement of drug and alcohol treatment for plaintiff because there were no drug or alcohol needs. That e-mail was written in response to an inquiry by Dana Bustos as to whether there was any flexibility around the required alcohol and drug treatment. Defendant nurse Kathleen Boyd also told plaintiff he would not be treated until he completed six months of drug and alcohol treatment. There are memos in plaintiff's medical file written by defendant Judy Beeman of the Infectious Disease ("ID") Committee on May 14, 2011, and July 11, 2011, in which she says to deny plaintiff treatment. Defendants refused to treat plaintiff because he refused to do their drug/alcohol class again. (Docket No. 18 at 9).

This ordeal has been so mentally exhausting for plaintiff, causing his "depression to act up full tilt." (Docket No. 18 at 8). His nerves have been so affected that he has had nervous breakdowns and has been biting his fingers such that they would bleed

until they are raw.

Plaintiff asserts that denial of medical treatment and medication for a chronic infectious disease is an Eighth Amendment violation of a prisoner's civil rights even if no prison official has "an improper, subjected stated of mind." (Docket No. 18 at 8). In addition, he asserts that refusing him treatment equals punishment without due process of law.

Plaintiff seeks declaratory, injunctive, and monetary relief, including punitive damages.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Now before the court are cross-motions for summary judgment (Docket Nos. 59 and 65). Plaintiff's motion, however, appears to be a response to defendants' motion. Defendants have filed a response to plaintiff's motion. (Docket No. 71) which essentially merely reiterates defendants' arguments in support of their motion for summary judgment and provides the same attachments. The court has carefully reviewed these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed, makes the following findings, conclusions of law, and recommendations.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the

4

absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

5

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

**Official Capacity.**  Defendants correctly assert that to the extent the plaintiff is suing them in their official capacity for monetary damages, they are entitled to immunity pursuant to the Eleventh Amendment.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's claims against the defendants are against them in their official capacities for monetary damages, such relief is barred by the Eleventh Amendment, and summary judgment should enter for the defendants on any such claims.

**Personal Participation.**  Defendants next assert that defendants Hodge and Boyd did not personally participate in the alleged constitutional violations.  Defendants have shown that pursuant to the Colorado Department of Corrections' ["CDOC"] Hepatitis C Virus ("HCV") Clinical Standard, inmates must follow specific, objective criteria in order to be considered for HCV treatment.  (Defs.' Ex. A-2, Docket No. 59-2, ¶ 7, Attach. 1, pp. 10-11).  These criteria included, but were not limited to, baseline testing, sufficient time remaining on the inmate's sentence to complete the treatment,

and completion of six months of substance abuse education classes.

Moreover, defendants have shown that the role of the medical providers at the facility in which the inmate is housed, here defendants Hodge and Boyd, is merely to submit the HCV paperwork to defendant Breeman for initial review. (Docket No. 59-2, ¶ 8). Such medical providers are not involved in making the decision whether to approve the inmate for HCV treatment. Rather, they merely gather and submit the information for review by the ID Committee which makes the decision to approve or deny an inmate HCV treatment. Here, plaintiff's HCV paperwork was submitted, after which defendant Beeman e-mailed Dr. Hodge asking for additional information because Beeman could verify that plaintiff had completed only two months of drug and alcohol education, rather than the then-requisite six months of education. Beeman subsequently learned that plaintiff had, in fact, completed only two months of classes. On August 4, 2011, Hodge thus sent plaintiff a note stating that plaintiff needed four more months of drug and alcohol education prior to the ID Committee consideration of his HCV treatment application. Defendant Boyd, and other staff members, repeatedly informed plaintiff of the requirement that he complete six months of drug and alcohol education.

Based upon these undisputed facts, this court finds that defendants Hodge and Boyd do not have the requisite personal involvement in the alleged constitutional violation. Therefore, summary judgment should enter for these two defendants.

**Defendant Beeman.** Defendants next assert that the evidence does not support a cognizable Eighth Amendment claim against defendant Beeman. They contend that Beeman was not deliberately indifferent to a substantial risk of harm to plaintiff and that plaintiff did not suffer substantial harm as a result of any alleged delay in receiving HCV

treatment.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. "[T]he Constitution is only implicated in situations in which prison officials act purposefully to impose unnecessary pain on an inmate; 'inadvertent' denials of care or negligent diagnosis or treatment does not rise to the level of an 8th Amendment violation." Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011). To plead an Eighth Amendment claim of deliberate indifference to medical needs, "an inmate must allege: (i) that he suffered from a serious medical need–that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it." Id. "The subjective component requires an examination into the defendant's actual state of mind. To satisfy this element, the inmate must plead facts that show that the defendant both 'actually knew of' and 'deliberately disregarded' the fact that the inmate was suffering from a serous medical need." Id.

Furthermore, "[a] delay in medical care 'only constitutes an Eighth Amendment


8

violation where the plaintiff can show that the delay resulted in substantial harm.'" Kneen v. Zavaras, 2012 WL 5493854, at *11 (D. Colo. Nov. 13, 2012) (quoting Oxendine, 241 F.3d at 1276). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001). Here, defendants presented expert evidence that there was no such harm. They submitted an affidavit from Andrew Martinez, M.D., Chief Medical Officer for the CDOC, who summarizes plaintiff's medical care (and attaches copies of reports from plaintiff's medical file) and provides detailed information about HCV and the CDOC's HCV Clinical Standard. (Defs.' Ex. A-1, Docket No. 59-1). This undisputed evidence demonstrates that plaintiff did not suffer substantial harm as a result of any delay in starting the HCV treatment. (Docket No. 59-1, ¶ 39).

As shown by defendants, plaintiff began HCV antiviral treatment in May 2013 after there were changes in the HCV Clinical Standard that went into effect in April 2013 that allowed the drug and alcohol education requirement to be waived for plaintiff. (Docket No. 59-1, ¶ 38). His records show that his liver functions have remained within normal laboratory range. (Docket No. 59-1, ¶ 40). "[H]is albumin (protein made in the liver), prothrombin (clotting factor made by the liver), and platelet (liver makes a maturation factor necessary for their development) levels have remained within normal ranges from the time they were recorded upon his intake into the CDOC in 2009 and the levels recorded in early 2013." (Docket No. 59-1, ¶ 39). His "plasma ammonia level was recorded as 64 mcgm/dl on April 3, 2013, which is within the normal range (27-102)." (Docket No. 59-1, ¶ 40, Attach. 25-29).

In addition, as shown by the defendants, HCV is typically a slowly-progressive

9

disease, with only 20 to 25 percent of patients developing cirrhosis of the liver over 25 to 30 years.  (Docket No. 59-1, ¶ 7).  Clinical progression of HCV is accelerated by co-infection with hepatitis B, HIV, and alcohol consumption (Docket No. 59-1, ¶ 8), none of which plaintiff apparently has (see Docket No. 59-1 at 9).  Most patients with HCV live their normal life span, do not develop complications of chronic liver disease, and die from other causes.  (Docket No. 59-1, ¶ 9).  Because HCV is slowly progressive, the CDOC's requirement that patients complete drug and alcohol classes prior to antiviral treatment should not be expected to contribute to significant progression of liver disease prior to initiation of treatment.  (Docket No. 59-1, ¶ 16).

Plaintiff offered no contrary evidence.  This court thus finds that plaintiff failed to show the requisite substantial harm as a result of the alleged delay in his starting the HCV treatment.  See Whitington v. Moschetti, 423 Fed. App's 767, 772-73 (10th Cir. May 9, 2011) (inmate did not show that delay in the HCV treatment caused substantial harm).

Based upon the findings above, and in the interest of judicial economy, the court will not address defendants' other arguments in support of their motion for summary judgment.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket No. 59) be **granted**.  It is further

**RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 65) be **denied**.

10

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: May 16, 2014               s/ Michael J. Watanabe
       Denver, Colorado        Michael J. Watanabe
                                       United States Magistrate Judge